IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMARTE USA HOLDINGS, INC.,

Plaintiff,

v.

KENDO HOLDINGS INC., et al.,

Defendants.

Case No.  22-cv-08958-CRB

**ORDER RE: SEALING AND MOTIONS TO AMEND**

Plaintiff Amarte USA Holdings, Inc. ("Amarte") brings this action for trademark infringement against Kendo Holdings, Inc. ("Kendo"), Mark Jacobs International LLC, Sephora USA, Inc., and The Neiman Marcus Group LLC (together, "Defendants"), for selling the Marc Jacobs "EYE-CONIC" eyeshadow palette, allegedly infringing on Amarte's "EYECONIC" trademark for its eye-cream.  See Compl. (dkt. 1).  Before the Court are three motions: Kendo's Motion to Consider Whether Amarte's Material Should Be Sealed (dkt. 80), Amarte's Third Motion for Leave to File a First Amended Complaint ("Amarte's Motion to Amend") (dkt. 73), and Kendo's Motion for Leave to Amend Answer to Add Counterclaim ("Kendo's Motion to Amend") (dkt. 81).

The Court finds that these motions are suitable for resolution without oral argument or further briefing, pursuant to Local Rule 7-1(b).  The Court ORDERS that Kendo unseal the sealed material at issue, DENIES Amarte's Motion, and GRANTS Kendo's Motion.

## I.    BACKGROUND

Amarte manufactures, advertises, markets, promotes, distributes, and sells high-end cosmetic and skin care products bearing the mark EYECONIC.  Compl. ¶¶ 15, 16, 17.

1   Amarte asserts that it has common law trademark rights and holds a registered trademark

2   in the EYECONIC mark.  Id. ¶¶ 15, 18, 19.  The trademark registration for EYECONIC is

3   as follows: "Class 03: eye cosmetics; eye creams," Id. ¶ 19.

4       Defendants allegedly use or have used an almost identical mark, EYE-CONIC, to

5   advertise, market, promote, distribute, and sell their eye makeup palettes.  Id. ¶¶ 18, 19.

6   According to Amarte, Defendants' use of the EYE-CONIC mark is likely to cause

7   customer confusion about the source, association, affiliation, and sponsorship of

8   Defendants' makeup palettes, or to deceive customers into believing that Defendants'

9   makeup palettes originate from the same source as, or are otherwise affiliated with,

10  Amarte's products.  Id. ¶¶ 33, 34.  Amarte contends that this use constitutes federal and

11  California common law trademark infringement of Amarte's rights in its EYECONIC

12  mark.  Id. ¶¶ 20–36; 71–74.  In addition, Amarte alleges that Defendants' willful selection

13  of the EYE-CONIC mark constitutes federal and California statutory and common law

14  unfair competition.  Id. ¶¶ 55–69, 75–80.

15      Defendants claim that their use of the EYE-CONIC mark in connection with eye

16  makeup palettes is not likely to cause consumer confusion with Amarte's EYECONIC

17  mark.  Kendo Answer to Compl. (dkt. 34) ¶¶ 23–24.  Specifically, Defendants argue that

18  its eyeshadow product, in conjunction with the well-known MARC JACOBS house mark,

19  is distinct from Amarte's EYECONIC eye cream.  Id.  Defendants also contend that

20  Plaintiff's claims are barred by laches, acquiescence, estoppel, mootness, and the statute of

21  limitations because the accused product was first offered for sale in 2017 and was

22  discontinued in 2021.  Id. at 10–15.

23  ## II.   PROCEDURAL POSTURE

24      There are three motions at issue here. (1) the administrative motion to seal; (2)

25  Amarte's Motion to Amend, in which Amarte seeks to add co-defendants and amend the

26  scheduling order; and (3) Kendo's Motion to Amend, in which Kendo seeks to amend its

27  answer to add a counterclaim.

28      On the administrative motion to seal: the Court provisionally sealed parts of

United States District Court
Northern District of California

Kendo's Motion to Amend and an attached exhibit.  See Sealing Mot.; Stipulated Protective Order (dkt. 51).  Kendo seeks to unseal all the redacted portions, and Amarte seeks to seal portions of the documents that it claims contain trade secrets.  See Kendo's Resp. to Sealing Mot. (dkt. 85); Amarte's Resp. to Sealing Mot. (dkt. 84)

On the motions to amend: the deadline to amend the complaint and answer expired on July 15, 2023, pursuant to the scheduling order.  See Scheduling Order at 6.  Before July 15, Amarte twice moved to amend its complaint to add co-defendants.  See Amarte's First Mot. to Amend Complaint (dkt. 52); Amarte's Second Mot. to Amend Complaint (dkt. 66).  The Court denied both of Amarte's motions without prejudice on futility grounds on August 21, 2023, after the deadline passed.  See Order Denying Amarte's Mot. to Amend (dkt. 72).  Amarte's motion is therefore its third attempt to amend its complaint to add co-defendants.  See Amarte's Mot.  Kendo's motion is its first to amend its answer. See Kendo's Mot.

## III.    ADMINSTRATIVE MOTION TO SEAL

Kendo moves to consider whether portions of Amarte's material in Kendo's Motion to Amend and portions of Exhibit 2 attached to the Declaration of Connor T. Gants (dkt. 81-1) should be sealed.[1]  See Sealing Mot.; Kendo's Mot.  The specified materials were provisionally redacted pursuant to the parties' Stipulated Order.  See Amarte's Resp. to Sealing Mot. (citing Stipulated Protective Order).

Amarte seeks to seal portions of Kendo's Motion to Amend and portions of Exhibit 2 attached to the Declaration of Connor T. Gants on the grounds that the information contains trade secrets, marketing strategies, and discussion of business strategy.  Amarte's Resp. to Sealing Mot. at 3.  Kendo argues that Amarte failed to carry its burden to establish that any of the portions should be sealed.  See Kendo's Resp. to Sealing Mot.  Because Kendo is correct that Amarte does not meet its burden, the Court ORDERS Kendo to

---

[1] Exhibit 2 is composed of excerpts from Amarte's deposition.  The excerpts are of information that was publicly available prior to the deposition.  See Opp'n to Kendo's Mot. (dkt. 86) at 9; see Gants Declaration, Exhibit 2.

1    unseal Kendo's Motion to Amend and Exhibit 2 in their entirety within 14 days of this

2    Order.

3        **A.    Legal Standard**

4        Courts recognize that the public has a right to access judicial records and

5    documents.  <u>Nixon v. Warner Commc'ns, Inc</u>., 435 U.S. 589, 597 (1978) (footnote

6    omitted).  "The presumption of access is 'based on the need for federal courts, although

7    independent—indeed, particularly because they are independent—to have a measure of

8    accountability and for the public to have confidence in the administration of justice.'"  <u>Ctr.

9    for Auto Safety v. Chrysler Grp., LLC</u>, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting

10   <u>United States v. Amodeo</u>, 71 F.3d 1044, 1048 (2d Cir. 1995)).

11       Generally, a court may seal records when it finds "a compelling reason and

12   articulates a factual basis for its ruling, without relying on hypothesis or conjecture."  <u>Id.</u> at

13   1096–97.  The "compelling reasons" standard applies when a motion is "dispositive," or

14   "more than tangentially related to the merits of a case."  <u>Id.</u> at 1098–1102.  Although there

15   is strong preference for public access to judicial records, the Ninth Circuit created an

16   exception for sealed materials attached to a discovery motion unrelated to the merits of the

17   case.  <u>Id.</u> at 1097.  Under this exception, the party seeking sealing of such materials need

18   only meet the "good cause" standard, which can protect the party or person from

19   "annoyance, embarrassment, oppression, or undue burden or expense."  <u>Id.</u>  Here, the

20   parties agree that the compelling reasons standard, not the good cause standard, applies to

21   the provisionally sealed portions.  <u>See</u> Amarte's Resp. to Sealing Mot. at 2; Kendo's Resp.

22   to Sealing Mot. at 2.

23       The compelling reasons standard requires the moving party to identify "compelling

24   reasons supported by specific factual findings . . . that outweigh the general history of

25   access and the public policies favoring disclosure."  <u>Kamakana v. City & Cty. of Honolulu</u>,

26   447 F.3d 1172, 1178–79 (9th Cir. 2006) (internal quotation marks and citation omitted).

27   The court must then weigh "'relevant factors,' base its decision 'on a compelling reason,'

28   and 'articulate the factual basis for its ruling, without relying on hypothesis or

United States District Court
Northern District of California

conjecture.'" <u>Pintos v. Pac. Creditors Ass'n</u>, 605 F.3d 665, 679 (9th Cir. 2010) (quoting <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995)).  For instance, compelling reasons may exist when a court document may "become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." <u>Kamakana</u>, 447 F.3d at 1179 (internal quotation marks omitted).  "A trade secret is a process or device for continuous use in the operation of business." <u>Clark v. Bunker</u>, 453 F.2d 1006, 1009 (9th Cir. 1972) (quoting Restatement of Torts, § 757, Comment b, p. 5).  This may "consist of any formula, pattern, device or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know or use it." <u>Id.</u> at 1009–10.

If publicly disclosing that information would harm a designating party's competitive standing and divulge terms of confidential contracts or contract negotiations, compelling reasons may exist to seal that information.  <u>See FTC v. Qualcomm Inc.</u>, No. 17-cv-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019).  However, the fact that documents are subject to a protective order, or labeled as confidential under a protective order, is not a compelling reason justifying continued sealing of the document if attached to a dispositive motion.  <u>Foltz v. State Farm Mut. Auto. Ins. Co.</u>, 331 F.3d 1122, 1136 (9th Cir. 2003); <u>see also</u> <u>Est. of Nunez by & through Nunez v. Cnty. of San Diego</u>, 386 F. Supp. 3d 1334 (S.D. Cal. 2019) ("[A] party does not satisfy the compelling reasons standard to justify sealing documents merely by labeling them as 'CONFIDENTIAL.'").

Additionally, Local Civil Rule 79-5 governs motions to file documents under seal in this District.  The rule permits sealing only where the party "establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civil L.R. 79-5(b).  "The request must be narrowly tailored to seek sealing only of sealable material." <u>Id.</u>  If the moving party "seek[s] to file under seal a document designated as confidential by the opposing party or a non-party pursuant to a protective order, or a document containing information so designated by an opposing party or a non-party . . . the Designating Party must file a declaration as required by subsection

United States District Court
Northern District of California

79-5(d)(1)(A) establishing that all of the designated material is sealable." Civil L.R. 79-5(e).

### B.    Discussion

Amarte does not seek to seal all the materials provisionally redacted pursuant to the parties' Stipulated Order. <u>See</u> Amarte's Resp. to Sealing Mot. at 3–4. Rather, Amarte seeks only to seal the five excerpts indicated in Section B.2, which it contends contain trade secrets.

### 1.    Portions Not In Dispute

Amarte does not designate as confidential the portions listed in the chart below. Amarte's Resp. to Sealing Mot. at 3–4. As such, the Court ORDERS Kendo to unseal the following portions of the Motion and Exhibit 2.

| Document | Portions filed under seal |
|---|---|
| Motion | Page 2, portions of line 16 |
| Motion | Page 7, portions of line 17–18 |
| Motion | Page 9, portions of line 2 |
| Motion | Page 9, portions of lines 17–24 |
| Motion | Page 10, portions of lines 1–6 |
| Motion | Page 10, portions of lines 10–11 |
| Motion | Page 11, portions of lines 20–22 |
| Motion | Page 12, portions of lines 12–13 |
| Motion | Page 15, portions of lines 1–4 |
| Motion | Page 16, portions of line 25 |
| Motion | Page 17, portions of lines 6–7 |
| Motion | Page 18, portions of lines 24–27 |
| Motion | Page 19, portions of lines 1–3 |
| Declaration, Ex. 2 | Page 1 in its entirety; Page 2 in its entirety; Page 27 in its entirety; Page 28 lines 1–23; Page 50 in its entirety; Page 51 lines 1–6 and lines 12–25; Page 56 lines 1 and lines 10-13; Page 57 lines 3–25; Page 173 in its entirety |

### 2.    Portions in Dispute

Amarte requests that the Court seal the portions indicated in the chart below. Amarte's Resp. to Sealing Mot. at 4. Amarte argues that every portion contains trade secrets in the form of "highly sensitive, confidential, non-public information related to Amarte's product formulation marketing strategies, internal strategic business decisions,

United States District Court
Northern District of California

and discussions with counsel." Id. at 5.  Kendo argues that no portions should be sealed because Amarte fails to fulfill its burden under the compelling reasons standard. See Kendo's Resp. to Sealing Mot.

| | Document | Portions to be filed under Seal | Text | Ruling |
|---|---|---|---|---|
| 1 | Motion | Page 10, portions of lines 7–9 | "When asked about the USPTO Manual's rule that 'semi colons should be generally used to separate distinct categories of goods,' Dr. Kraffert responded that he was 'not aware of the formalities of trademark law' and 'that's why I have counsel.'" | Deny |
| 2 | Declaration, Ex. 2 | Page 28, lines 24–25 | "Q. Is it the same formulation? A. Yes. The formulation has changed" | Deny |
| 3 | Declaration, Ex. 2 | Page 51, lines 7–11 | "Q. Are you aware of a trademark office rule that says that semi colons should generally be used to separate distinct categories of goods? A. I am not aware of the formalities of trademark law. That's why I have counsel." | Deny |
| 4 | Declaration, Ex. 2 | Page 56, lines 2–9 | "A. It's intended for use anywhere a person wants to use it. Some people want to use it all over because it's a great product. It's just that it's very expensive. And the most important area for a very expensive precious cream like this is this the eye area, eye contour area, which is why that's where we market and that's how we have continued to market it." | Deny |
| 5 | Declaration, Ex. 2 | Page 56, lines 14–25, and Page 57, lines 1–2 | "Q. Does Amarte still continue to market it for use in the lip area? A. I have – Mr. Kim: Objection; form. The Witness: The thrust of this product is as an eye cream. That's how we market it and position it. The suggestion of using it around the lips is an add-on because some people think about that and we are just giving them license to do that. But as in terms of the marketing and branding, this is an eye cream. Eye cosmetic. That is the thrust of the marketing and the branding. As stated in the name of the product itself, right | Deny |

United States District Court
Northern District of California

| | | | there in bold on top." | |
|---|---|---|---|---|

### a.      Testimony Concerning Discussions with Counsel

Amarte argues that Numbers 1 and 3 should be sealed because they contain testimony about "substantive discussions with counsel."  Amarte's Resp. to Sealing Mot. at 4.  Kendo argues that these portions should not be sealed because they reflect an unsubstantive, lack of conversation with counsel and Amarte did not identify facts pertinent to harm it would suffer should this information be disclosed.  Kendo's Resp. to Sealing Mot. at 2–3.

The Court agrees with Kendo and ORDERS that Kendo unseal these portions. Amarte did not provide "specific factual findings" as to why it would be harmed by these unsubstantive conversations.  Kamakana v, 447 F.3d at 1178–79.

### b.      Testimony Concerning Plaintiff's Formula

Amarte argues that Number 2 should be sealed because the testimony is related to the formula that bears its EYECONIC trademark.  Amarte's Resp. to Sealing Mot. at 4. Kendo argues that this should not be sealed because the testimony does not divulge information about the product formula and Amarte did not allege facts about why it would be harmed by the public disclosure of this information.  Kendo's Resp. to Sealing Mot. at 3.

The Court ORDERS Kendo to unseal this portion because Amarte did not articulate with particularity why the statement regarding its formula is a trade secret.  Instead, it stated only that "[e]ach portion . . . contains highly sensitive, non-public information related to Amarte's product formulation, marketing strategies, internal strategic business decisions, and discussions with counsel."  Amarte's Resp. to Sealing Mot. at 5.  This is not an explanation with particularity about why publication of this portion, which gives no specific detail about Amarte's product formulation, could result in infringing upon a trade secret, so this portion should be unsealed.  See Kivett v. Flagstaff Bank, FSB, 2019 WL 13203923 *1 (N.D. Cal. Nov. 4, 2019) (denying an administrative motion to seal because the party seeking sealing did not assert harm "with particularity").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c.  Testimony Concerning Marketing

Amarte argues that Numbers 4 and 5 should be sealed because they reference marketing and business strategies for Amarte's product bearing its EYECONIC mark. <u>See</u> Amarte's Resp. to Sealing Mot. at 4.  Kendo argues that this testimony should not be sealed because it speaks to public-facing aspects of product marketing.  <u>See</u> Kendo's Resp. to Sealing Mot. at 3.

The Court ORDERS Kendo to unseal these portions because Numbers 4 and 5 consist of publicly available material regarding the way Amarte markets the EYECONIC Eye Cream.  <u>See</u> Amarte's Resp. to Sealing Mot. at 4.  For example, Amarte seeks to seal statements that it markets the cream primarily as an eye cream, but it is "intended for use anywhere a person wants to use it. Some people want to use it all over because it's a great product."  <u>Id.</u> at 5.  However, the FAQ section of Amarte's public website includes that same information:

Q: "Can Eyeconic be used in places other than the eye contour and lip areas?"

A: "Eyeconic can certainly be used anywhere on the face. This precious formula is probably best reserved, however, for area requiring extra care and attention."

Gant Declaration, Exhibit A.

Because the material that Amarte seeks to seal is publicly available on its website and in other public-facing marketing, the Court denies Amarte's request to seal Numbers 4 and 5.  <u>See</u> <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret.").

In sum, the Court ORDERS Kendo to unseal Kendo's Motion to Amend and Exhibit 2 in their entirety.

## IV.  AMARTE'S MOTION

Amarte filed a third motion to amend its complaint to join co-defendants, identified as third-party retailers in Defendants' first set of produced documents.  Amarte's Mot. at 2.  Those defendants are: Boxycharm, PBD, JCP, YNAP, ROSS, and TJX ("Proposed Defendants").  Proposed FAC (dkt. 73-2) ¶¶ 39–44.  Amarte previously filed two motions

1    to amend to add "interested corporate parent parties" and "retailers of goods bearing the

2    infringing EYE-CONIC trademark."  Amarte's Second Mot. to Amend at 3; see Amarte's

3    First Mot. to Amend Complaint.  The Court denied those motions without prejudice on

4    futility grounds because the amendment failed to sufficiently plead direct infringement and

5    personal jurisdiction for the proposed parties.  See Order Denying Amarte's Mot. to

6    Amend.

7        Defendant opposes Amarte's latest motion contending that (1) Amarte did not show

8    good cause pursuant to Rule 16 and (2) leave to amend would be futile under Rule 15.  See

9    Opp'n to Amarte's Mot. (dkt. 74).

10       **A.    Legal Standard**

11       Once a district court files a pretrial scheduling order, FRCP 16 governs the

12   timetable for amending pleadings.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604,

13   607–08 (9th Cir. 1992).  A "party seeking to amend pleading after [the] date specified in

14   scheduling order must first show 'good cause' for amendment under Rule 16(b)" before

15   demonstrating that amendment was proper under Rule 15.  Id. at 608.  Good cause is a

16   heightened standard that "primarily considers the diligence of the party seeking the

17   amendment."  Id. at 609.  "If the party seeking the modification 'was not diligent, the

18   inquiry should end' and the motion to modify should not be granted."  Zivkovic v. S.

19   California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at

20   609).

21       Under Rule 15, the Court should freely give leave to amend "when justice so

22   requires."  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has instructed that the policy

23   favoring amendment "should be applied with 'extreme liberality.'"  United States v. Webb,

24   655 F.2d 977, 979 (9th Cir. 1981) (quoting Rosenberg Brothers & Co. v. Arnold, 283 F.2d

25   406, 406 (9th Cir. 1960) (per curiam)).  However, leave to amend "is not to be granted

26   automatically."  In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738

27   (9th Cir. 2013) (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990)).

28   A court considers five factors to assess whether to grant leave to amend: "[1] undue delay,

United States District Court
Northern District of California

10

[2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendment previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and] [5] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "Futility alone can justify the denial of a motion for leave to amend." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

## B.    Discussion

Pursuant to the Court's scheduling order, the parties' deadline to amend the pleadings and/or add parties was July 15, 2023. See Scheduling Order (dkt. 49) at 6. Therefore, the Court addresses whether Amarte presented good cause under Rule 16 before addressing the factors under Rule 15. See, e.g., Johnson, 975 F.2d at 608 (holding that Rule 16(b) is a threshold issue when a party seeks to amend a pleading after the deadline in a scheduling order).

### 1.    Rule 16

The Court finds Amarte has satisfied the good cause standard. To show good cause to satisfy Rule 16(b), Amarte is required to demonstrate that, despite its diligence, it could not reasonably comply with the pretrial schedule. See id. at 609. The two inquiries for the Court to address are (a) whether Amarte knew of the Proposed Defendants before the filing deadline; and (b) if Amarte knew, whether it was unable to reasonably comply with the pretrial schedule despite its diligence.

Amarte argues that Defendants intentionally withheld production of the Proposed Defendants' identities until four days before the deadline to amend pleadings. Reply to Amarte's Mot. at 6–7. Defendants argue that Amarte knew of the Proposed Defendants through documents produced in discovery before the filing deadline, and was careless in failing to meet the filing deadline. Opp'n to Amarte's Mot. at 8–9.

### a.    Knowledge of the Proposed Defendants

The record indicates that Amarte learned of the Proposed Defendants four days before the scheduling deadline to amend pleadings and/or add parties. See Reply to

United States District Court
Northern District of California

Amarte's Mot. at 7; Scheduling Order at 6.  A timeline of the proceedings prior to this instant Third Motion to Amend is as follows:

- On April 7, 2023, Amarte served Defendants Interrogatories and other discovery requests.  See Reply to Amarte's Mot. at 7.
- On July 11, 2023, Defendants responded to the Interrogatories and other discovery requests and produced documents.  See Reply to Amarte's Mot. at 7.
- On July 14, 2023, Amarte filed a Second Motion to Amend.  See Amarte's Second Mot. to Amend.
- On July 15, 2023, the deadline to amend/add parties expired.  See Scheduling Order at 6.
- On August 21, 2023, the Court denied Amarte's Second Motion to Amend.  See Order Denying Amarte's Second Mot. to Amend.
- On August 29, 2023, Amarte filed the instant Third Motion to Amend.  See Amarte's Mot.

Since Amarte learned the identities of the Proposed Defendants from documents produced on July 11, 2023, the primary question for the Court is whether Amarte was unable to reasonably comply with the July 15 deadline to add new parties in the pretrial schedule, despite its diligence.

### b.    Diligence

Amarte was diligent in complying with the July 15 deadline because it sought production of the Proposed Defendants' identities in April of 2023, months before the July 15 deadline, yet it did not receive the information from Defendants until July 11, 2023. See Reply to Amarte's Mot. at 7.  Three days after receiving Defendants' response, Amarte filed its Second Motion to Amend on July 14, 2023.  Id.  The Court did not issue its order denying this motion until August 21, 2023, more than a month after the July 15 deadline.  See Order Denying Amarte's Second Mot. to Amend.  Thus, despite its diligence, Amarte could not have complied with the Scheduling Order for its Third Motion

12

United States District Court
Northern District of California

1   to Amend.

2       Even so, Amarte filed the Third Motion for Leave to Amend Complaint and to

3   Amend Scheduling Order eight days after the Court denied the Second Motion to Amend.

4   Reply to Amarte's Mot. at 7. This short timeframe shows that Amarte was reasonably

5   diligent in seeking leave to amend from the Court once it was apparent it could not comply

6   with the Scheduling Order. Cf. AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d

7   946, 953 (9th Cir. 2006) ("An eight month delay between the time of obtaining a relevant

8   fact and seeking a leave to amend is unreasonable.").

9              **2.    Rule 15**

10       The Rule 15 factors are as follows: "[1] undue delay, [2] bad faith or dilatory

11   motive on the part of the movant, [3] repeated failure to cure deficiencies by amendment

12   previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of

13   the amendment, [and] [5] futility of amendment." Leadsinger, Inc., 512 F.3d at 532. A

14   proposed amendment is futile only if "no set of facts can be proved under the amendment

15   to the pleadings that would constitute a valid and sufficient claim." See Miller v. Rykoff-

16   Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

17       Defendants argue that Amarte's proposed First Amended Complaint is futile

18   because it fails to plead direct infringement. See Opp'n to Amarte's Mot. at 10.

19   Defendants also argue that they would be prejudiced by the amendment and that the

20   motion was brought in bad faith. Id. at 15–17. Amarte argues that the amendment is not

21   futile and that it filed the motion in good faith. See Reply to Amarte's Mot. (dkt. 79).

22              **a.    Futility**

23       Amarte alleges that each of the Proposed Defendants, "on information and belief,"

24   "advertised, promoted, sold and/or has offered for sale the Infringing Goods bearing

25   Defendants' EYE-CONIC Mark on [the Proposed Defendant's] website" and are "direct

26   seller[s] to residents of California through the regular course of business, all of which have

27   resulted in significant sales." Proposed FAC ¶¶ 39–44. Amarte contends that these claims

28   are "as specific as possible without conducting discovery." Reply to Amarte's Mot. at 9.

1    Defendants argue that Amarte's key facts occur in the open commercial

2    marketplace and are publicly available information, so Amarte cannot plead publicly

3    available information "on information and belief."  Opp'n to Amarte's Mot. at 11.

4    The Court finds that Amarte's proposed allegations are insufficient to plausibly

5    allege infringement by the Proposed Defendants, and thus its proposed amendment would

6    be futile.  The Court previously denied Amarte's motion to leave to amend to add these

7    same co-defendants because Amarte did not allege how each individual party infringed on

8    its trademark.  See Order Denying Amarte's Second Mot. to Amend. at 3.  In the latest

9    Proposed Amended Complaint, Amarte again does not specifically allege how PBD, Ross,

10   JCP, or TJX infringed on its Mark.  Proposed FAC ¶¶ 39–44.  Amarte does not allege new

11   facts, nor does it provide additional clarity as to each Proposed Defendant's allegedly

12   infringing conduct.  Rather, Amarte used the same insufficient pleading from its Second

13   Proposed Amended Complaint and simply disaggregated each individual defendant.

14   Proposed FAC ¶¶ 39–44.  Separating out each individual defendant, rather than using a

15   defined group, is insufficient to satisfy the pleading standard under Rule 8.  Id.; see

16   Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) ("[P]laintiffs must . . . 'state[]

17   clearly how each and every defendant is alleged to have violated plaintiffs' legal rights.'").

18   The Court DENIES Amarte's motion for leave to amend on futility grounds, so the

19   Court need not determine whether there would be undue prejudice.  See Nunes v. Ashcroft,

20   375 F.3d at 808 ("Futility alone can justify the denial of a motion for leave to amend.").

21   Since this is Amarte's third motion for leave to amend, the Court DENIES the motion with

22   prejudice for "repeated failure to cure deficiencies by amendment previously allowed."

23   Leadsinger, Inc., 512 F.3d at 532.

24   **V.    KENDO'S MOTION**

25   Kendo moves for leave to amend its answer to add a counterclaim. Kendo seeks to

26   add a counterclaim for cancellation of Amarte's Mark on the basis that Amarte's

27   trademark registration covers a good that does not exist.  See Kendo's Mot.  Specifically,

28   Amarte's Mark covers both eye cosmetics and eye creams, and Kendo alleges that Amarte

1   sold only eye creams.  Id. at 7.

2   Amarte opposes this motion because (A) Kendo did not show good cause

3   pursuant to Rule 16 and (B) leave to amend would be futile under Rule 15.  See Opp'n to

4   Kendo's Mot. (dkt. 86).

5   As referenced above, the parties' deadline to amend the pleadings and lapsed on

6   July 15, 2023, pursuant to the Court's scheduling order.  See Scheduling Order at 6.  The

7   Court addresses whether Kendo has presented good cause under Rule 16 before

8   addressing the factors under Rule 15.  See Johnson, 975 F.2d at 608.

9       **A.      Rule 16**

10   To show good cause to satisfy Rule 16(b), Kendo is required to demonstrate

11   that, despite their diligence, they could not reasonably comply with a pretrial schedule.

12   See Johnson, 975 F.2d at 609.  As with Amarte's Motion, the inquiry for the Court to

13   address is whether, despite their diligence, Kendo was unable to reasonably comply with

14   the pretrial schedule once it found out that Amarte used the EYECONIC mark for only an

15   eye cream.

16   The parties disagree about when Kendo had knowledge that Amarte used the

17   EYECONIC mark for only an eye cream.  Kendo argues that it diligently investigated

18   Amarte's use of the Mark through written discovery.  See Kendo's Mot. at 12.  According

19   to Kendo, Amarte represented in its first set of interrogatory responses, dated May 25,

20   2023, that its Mark was used in six different types of goods: cosmetics, skin care products,

21   cosmetic creams, skin care creams, eye cosmetics, and eye creams.  Id. at 9. Kendo argues

22   that it did not know that Amarte's use of the EYECONIC Mark was limited to one product

23   until the deposition of Amarte's corporate representative, Dr. Craig Kraffert, on September

24   19, 2023, nearly two months after the deadline to amend its answer had passed.  Id. at 11.

25   Subsequently, Kendo filed the Motion to amend its answer to add counterclaim on October

26   5, 2023.  Id. at 19.

27   Amarte argues that its corporate representative deposition did not provide new

28   information to Kendo that was not already in the public record or produced in discovery

before the scheduling deadline.  Opp'n to Kendo's Mot. at 6.  Amarte points to the trademark registration for the Mark, which states, "Class 03: eye cosmetics; eye creams," Compl. ¶ 19, USPTO public record history associated with the EYECONIC Registration, an internet search, and documents produced to Defendants on July 7, 2023, to demonstrate that Kendo had access to this information.  See Opp'n to Kendo's Mot. at 12–13.  Amarte argues that this production shows that Kendo knew the full extent to which Amarte used the EYECONIC Mark.  Id. at 8–9.  Amarte argues that Kendo acknowledged it was "an open question whether the EYECONIC Trademark was in use for 'eye cosmetics' at the time it reviewed the Complaint," so Kendo should have investigated this prior to the scheduling deadline.  Opp'n to Kendo's Mot. at 3.

     The Court finds that Kendo did not have knowledge sufficient to state a counterclaim that Amarte used the EYECONIC mark for only an eye cream until Amarte's corporate representative deposition on September 19, 2023.  Even taking Amarte's argument as true, that Kendo had suspicions that Amarte's use of the EYECONIC Mark was limited to one product, "having a suspicion and having sufficient information to certify in a pleading (subject to Rule 11 sanctions) that one asserts a claim or defense 'after an inquiry reasonable under the circumstances' are two very different matters."  Reald Spark, LLC v. Microsoft Corp., No. 2:22-CV-00942-TL, 2023 WL 7110505 *3 (W.D. Wash. Oct. 27,  2023).  Amarte's deposition on September 19, 2023, confirmed for Kendo for the first time that Amarte used the EYECONIC Mark solely for an eye cream and provided a factual basis to plausibly allege the counterclaim.  See Kendo's Mot. at 11.  "[D]iscovery of new evidence is often sufficient to satisfy the good cause standard."  Macias v. Cleaver, No. 1:13-CV-01819-BAM, 2016 WL 8730687 *4 (E.D. Cal. Apr. 8, 2016).

     The Court finds that, despite their diligence, Kendo could not reasonably comply with the deadline to add a counterclaim in the scheduling order.  Defendants served its first set of interrogatories to Amarte on April 25, 2023, months before the

scheduling deadline on July 15, 2023.  Kendo's Mot. at 11.  Kendo learned of Amarte's use of the Mark from Amarte's deposition on September 19, 2023.  Id. at 19.  Two weeks after learning this information, Kendo moved to amend its answer to add counterclaim on October 5, 2023.  Id.  Kendo demonstrated that it was diligent in seeking discovery well ahead of the scheduling deadline, and in moving to amend soon after it learned the new information at Amarte's deposition.  However, despite this diligence, Kendo was unable to reasonably comply with the scheduling order, given that the relevant deadline has passed by the time it learned the new information.  See Johnson, 975 F.2d at 609.  The Court finds that Kendo satisfies the Rule 16 standard, and thus that the Court reaches the Rule 15 inquiry.

**B.    Rule 15**

Again, the Rule 15 factors are as follows: (1) futility; (2) bad faith; (3) undue delay; (4) repeated failure to cure; and (5) undue prejudice.  Leadsinger, Inc., 512 F.3d at 532.  A proposed amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim."  See Miller, 845 F.2d at 214.  "Absent prejudice, or strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

**1.    Futility**

Kendo seeks to amend to its answer to add a counterclaim for cancellation of Amarte's EYECONIC Mark because Amarte only used the Mark for eye creams, and not eye cosmetics.  Kendo's Mot. at 2.  Amarte argues that amendment would be futile because Kendo cannot plausibly allege that the Mark must be used for two separate products (an eye cream and an eye cosmetic) to remain registered.  Opp'n to Kendo's Mot. at 12.

"Cancellation of registration is proper when (1) there is a valid ground for why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing."  Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 348

(9th Cir. 1984) (quotation marks omitted).  Amarte does not dispute that Kendo has standing to petition for cancellation, so the relevant question is whether there is a valid ground for cancellation.  Opp'n to Kendo's Mot. at 11.

Kendo bases its counterclaim under § 1064(6) of the Trademark Modernization Act of 2020, which allows any person to petition to cancel a registration of a Mark "[a]t any time after the 3-year period following the date of registration, if the registered mark has never been used in commerce on or in connection with some or all of the goods or services cited in the registration."  15 U.S.C. § 1064(6); Kendo's Mot. at 14.  Kendo also cites to the USPTO Manual, which provides that "semicolons should generally be used to separate distinct categories of goods or services within a single class." USPTO Manual § 1402.01(a); Kendo's Mot. at 14–15.

Kendo's amendment to add its cancellation counterclaim is not futile.  Kendo sufficiently alleges that more than three years have lapsed since Amarte registered the EYECONIC trademark in 2013.  Proposed Amended Answer (dkt. 81-1) at 66, 68. Kendo's allegation that "Plaintiff has only used the Mark in commerce in connection with a single product, which it offers for sale as 'Eyeconic Eye Cream," is sufficient to state a claim for cancellation of registration.  Id. at 68; 15 U.S.C. § 1064(6).

Amarte argues that its use of the EYECONIC Trademark for an "eye cream cosmetic product" is sufficient to support the "eye cosmetics" and "eye creams" described in the Trademark registration, and that the use of a semicolon to separate the two phrases does not require Amarte to have two different products.[2]  Opp'n to Kendo's Mot. at 14–15. While these arguments may ultimately have merit, the motion before the Court is a motion to amend to add a newly discovered counterclaim.  And the Court concludes that

---

[2] The only legal authority that Amarte cites for this proposition is GDM Enterprises, LLC v. Astral Health & Beauty, Inc.  Opp'n to Defendants' Mot. at 14–15 (citing GDM Enterprises, LLC v. Astral Health & Beauty, Inc., No. 17-10690CV-W-SRB, 2019 WL 4790917 (W.D. Mo. Sep. 30, 2019)).  However, that case does not hold that cancellation claims are barred when based on the assertion that a product is not properly described in a registration statement.  See Defendants' Mot. at 14–15.  That case therefore does not bear on the Rule 15(a) futility inquiry here.  See Opp'n to Defendants' Mot. at 14–15

Kendo has plausibly stated "factual content that allows the court to draw the reasonable inference that the [infringing party] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### 2.    Bad Faith

The non-moving party has the burden of showing bad faith under Rule 15, which can be demonstrated by offering facts that a motion was filed for a frivolous or improper purpose. Eminence Cap., LLC, 316 F.3d at 1052; see Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks, 915 F.2d 1301, 1305 (9th Cir. 1990). Amarte argues that Kendo brought the Motion in bad faith to harass and inflict monetary harm, and that no reasonable person could believe that eye cosmetics do not encompass eye creams. Opp'n to Kendo's Mot. at 20–21. However, Amarte does not offer facts supporting that Kendo filed the motion in bad faith, such as for a frivolous or improper purpose. As described in the previous section, Kendo's proposed counterclaim is not frivolous because it plausibly stated a claim for cancellation of registration of Amarte's Mark. See infra at 19–20. Amarte has not demonstrated that no reasonable person could believe Kendo's position that the EYECONIC Mark was only used for a single product. See Opp'n to Kendo's Mot. at 20–21; Proposed Amended Answer at 66, 68. And Amarte has not offered facts that Kendo otherwise brought the motion for an improper purpose, such as to inflict monetary harm, other than the fact that Defendants have "considerable financial might." Id. at 21. Therefore, Amarte has not shown that Kendo filed the motion in bad faith.

### 3.    Undue Delay

When evaluating the undue delay factor, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990).

Amarte argues that granting Kendo's motion will "make it impossible" for it to conduct additional discovery in compliance with the scheduling order. Opp'n to Kendo's Mot. at 21–22. However, Kendo did not know the full extent of Amarte's use of its Mark

United States District Court
Northern District of California

until Amarte's September 19th corporate representative deposition, so it was unable to conduct discovery pursuant to this claim under the original scheduling order. See infra at 18–19. Because Kendo only learned of Amarte's full use of the EYECONIC mark through Dr. Kraffert's deposition on September 19, 2023, and filed this motion two weeks later, the Court finds that there was no undue delay. See Kendo's Mot. at 11.

The Court ORDERS the parties to submit a new Proposed Scheduling Order, with updated deadlines, to allow the parties to conduct additional discovery regarding the Proposed Counterclaim.

### 4.    Repeated Failure to Cure

This is Kendo's first motion to amend to add its counterclaim, so there has not been a "repeated failure to cure deficiencies previously allowed." Kendo's Mot. at 17. Amarte's Opposition does not address this factor at all. This factor weighs in favor of Kendo.

### 5.    Undue Prejudice

The non-moving party has the burden of showing prejudice under Rule 15. Eminence Cap., LLC, 316 F.3d at 1052. Amarte argues that it would be prejudiced in having to "sit through a [costly] second deposition." Opp'n to Kendo's Mot. at 22. Kendo argues that the Proposed Counterclaim is limited in scope, so it will not impose a large burden or cost to Amarte. Kendo's Mot. at 18.

The Court finds that Amarte will not be unduly prejudiced by Kendo's assertion of the Proposed Counterclaim. Amarte has not proffered facts to show it would be unduly prejudiced based solely on the potential of an additional, limited scope deposition. See Opp'n to Kendo's Mot. at 22. In addition, courts have found on similar facts that there would not be undue prejudice to allow an amendment. See, e.g., DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187–88 (9th Cir. 1987) ("Given that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [the nonmoving party] would be prejudiced by the timing of the proposed amendment.").

The Court GRANTS Kendo's motion for leave to amend their answer to add the proposed counterclaim because Kendo has established good cause under Rule 16, and all of the Rule 15 factors weigh in favor of amendment.

## VI.   CONCLUSION

For the foregoing reasons, the Court ORDERS Kendo to unseal Kendo's Motion to Amend and Exhibit 2 in their entirety, DENIES Amarte's Motion to Amend its Complaint to add the Proposed Defendants, and GRANTS Kendo's Motion to Amend its Answer to add its counterclaim.  The Court also ORDERS the parties to submit a new Proposed Scheduling Order within 14 days, with updated deadlines to allow the parties to conduct additional discovery regarding Kendo's Proposed Counterclaim.

**IT IS SO ORDERED.**

Dated: December 4, 2023

CHARLES R. BREYER
United States District Judge