IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AMARTE USA HOLDINGS, INC., | Case No.  22-cv-08958-CRB |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR FEES** |
| KENDO HOLDINGS INC., et al., | |
| Defendants. | |

Plaintiff Amarte USA sued Defendants Kendo, Marc Jacobs International, Sephora USA, and the Neiman Marcus Group for trademark infringement.  See Compl. (dkt. 1). The Court granted Defendants' motion for summary judgment.  See MSJ Order (dkt. 173). Defendants now move for attorney fees.  See Mot. (dkt. 190).  The Court finds the matter suitable for resolution without a hearing pursuant to Local Civil Rule 7-1(b) and **GRANTS** Defendants' fees motion based on Amarte's unreasonable conduct in this litigation.

## I.    BACKGROUND

The Court's prior order, available at 2024 WL 4093910, describes the facts of this case in detail.  The following high-level overview provides only the context necessary to address this fees motion.

Plaintiff Amarte sells high-quality skincare products, including its trademarked EYECONIC eye cream.  MSJ Order at 1–3.  Defendants sell beauty products, including Kendo and Marc Jacobs' MJB EYE-CONIC eye shadow.  Id. at 3.  In 2021 Amarte sent a cease-and-desist letter to Marc Jacobs.  Id. at 2.  Kendo's general counsel responded and explained to Amarte that MJB EYE-CONIC had been discontinued.  Id. at 2–3.  Sephora USA, the last Defendant to sell the product, stopped selling it in February 2022.  Id. at 3.

In December 2022 Amarte sued Defendants for federal trademark infringement and several related counts. The Court ultimately granted summary judgment for Defendants. In doing so, the Court found that there was no likelihood of confusion between Plaintiff's EYECONIC eye cream and Defendants' MJB EYE-CONIC eye shadow. Id. at 9–21.[1]

Defendants now move for attorney fees, arguing both that Amarte engaged in unreasonable litigation conduct and that its case was substantively weak. As evidence of Amarte's unreasonable conduct, Defendants point to Amarte's repeated attempts to expand the scope of the case to ancillary parties (such as parent companies and retailers), Amarte's factual misstatements at various stages of litigation, and Amarte's uncooperative behavior during discovery. Mot. at 9–16. They further state that Amarte was improperly motivated by an interest in extracting a settlement from Defendants. Id. at 16–17. As evidence of Amarte's allegedly weak case, Defendants point to the lack of any direct evidence of consumer confusion between the EYECONIC and MJB EYE-CONIC products, as well as clear dissimilarities between the products' packaging. Id. at 17–19.

Defendants assert that their timekeepers billed over 2,300 hours and incurred over $2 million in legal fees, of which they seek to recover approximately $1.3 million (plus fees associated with this motion, which would be calculated later). Id. at 8–9.

## II. DISCUSSION

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). There is no "precise rule or formula for making these determinations," but "district courts analyzing a request for

---

[1] Amarte has appealed the Court's summary judgment order to the Ninth Circuit. See Notice of Appeal (dkt. 193).

United States District Court
Northern District of California

fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional." Id. at 1181 (quoting Octane Fitness, 572 U.S. at 554). The Supreme Court has identified several factors for courts to weigh, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. (quoting Octane Fitness, 572 U.S. at 554 n.6). Amarte challenges the appropriateness of attorney fees at all, as well as the reasonableness of the fees that Defendants request. See Opp. (dkt. 197).

### A.    Whether to Award Attorney Fees

At the outset, the parties dispute whether a motion for fees can be granted based solely on a party's unreasonable litigation conduct or whether the party's litigation position must also have been substantively weak. Both purport to rely on Octane Fitness. Compare Opp. at 2 ("Defendants cite no authority that a court can ignore the merits of a claim in order to award fees under Octane Fitness."), with Reply (dkt. 211) at 5 ("[T]he Supreme Court itself said that a case can be exceptional on the basis of litigation conduct alone."). Defendants have the better interpretation of Octane Fitness, which states that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." 572 U.S. at 554 (emphasis in original). "Or" means "or," and Amarte points to no language in Octane Fitness that would suggest a contrary interpretation.

Accordingly, the Court can, and does, grant Defendants' motion on the basis of Amarte's conduct alone. Some of the analysis bleeds into the merits of Amarte's case, but the merits are not so obviously weak to warrant attorney fees on their own.[2] Amarte's conduct, however, crosses the line from acceptable to unreasonable. Specifically, Amarte (1) filed multiple meritless, dilatory motions; (2) repeatedly misrepresented material facts;

---

[2] To be sure, the facts that (1) Amarte never had any evidence that any consumer was ever confused between the marks and (2) the products' packaging looked nothing alike made Amarte's case very weak from the start. But those points by themselves do not make this case "stand[] out from others" on its merits. See Octane Fitness, 572 U.S. at 554.

and (3) was uncooperative to the point of stonewalling in discovery.  Moreover, this conduct, taken as a whole, strongly suggests that Amarte was improperly motivated by an effort to extract settlement money rather than good-faith trademark enforcement.  This case is therefore "exceptional" under the Lanham Act, and attorney fees are proper.[3]

### 1.    Repeated meritless motions to add defendants

Amarte sought leave to amend its complaint three times—once to add seven of Defendants' parent companies and twice to add nearly a dozen retailers.  The Court denied all of these attempts.  Indeed, Amarte's repeated attempts to expand the scope of this litigation were not only without merit; they needlessly prolonged litigation and demonstrated Amarte's defiance of adverse rulings.

In Amarte's first effort to amend its complaint, it sought to add parent companies as defendants based solely on the fact that the parents were listed on Defendants' Rule 7.1 disclosures.  First Mot. to Amend (dkt. 52) at 6–7.  But Amarte's allegations as to the parents' alleged misconduct were "sparse," limited to allegations that the parents "direct, own, and control" the existing Defendants.  Order Denying First & Second Mots. to Amend (dkt. 72) at 3 (quoting Proposed Second Am. Compl. (dkt. 66-1) ¶¶ 42, 44, 46, 49).  Amarte's allegations as to personal jurisdiction were similarly so "bare" as to be "plainly insufficient."  Id. at 4–5.  Amarte did not go into any greater depth as to its theory of liability for Defendants' parents in its motion to amend.  Instead, it recited the boilerplate legal standard for evaluating proposed amendments and then asserted, without any explanation, that its proposed amendment would not be futile.  First Mot. to Amend at 7–8.

In Amarte's second attempt at amendment, it sought to add various retailers on the sole basis that they "sell, advertise, market, and promote the Infringing Goods bearing

---

[3] The fact that this case is primarily about Amarte's conduct, rather than the merits of its position, makes this case different from Blue Bottle Coffee, LLC v. Liao, No. 21-cv-6083-CRB, 2024 WL 2061259 (N.D. Cal. May 7, 2024), on which Amarte heavily relies.  In that case, the Court denied a motion for attorney fees, but the defendants' primary argument was that the plaintiff's case was frivolous.  See id. at *2–4.  There were only a handful of allegations about alleged litigation misconduct, such as "sloppy" references to nonexistent figures and exhibits.  Id. at *5.  This case, by contrast, involves far more (and far more concerning) allegations of unreasonable conduct.

United States District Court
Northern District of California

Defendants' EYE-CONIC Mark on their respective websites, social media platforms, other advertising media, in their retail locations nationwide, including retail stores in this judicial district, or otherwise direct their infringing activities in this judicial district, or have done so in the past."  Proposed SAC ¶ 51.  The Court found this single allegation insufficient to allege either infringement or personal jurisdiction over the proposed retailer defendants.  Order Denying First & Second Mots. to Amend at 5.  Undeterred, Amarte tried again, seeking for a third time to amend its complaint—this time to add "the same insufficient pleading from its Second Proposed Amended Complaint."  Order Denying Third Mot. to Amend (dkt. 96) at 14 (quoting Proposed First Am. Compl. (dkt. 73-2) ¶¶ 39–44).  Because Amarte did not "allege new facts" or "provide additional clarity as to each Proposed Defendant's allegedly infringing conduct," the Court once again denied Amarte's attempt.  Id.

Defendants argue that Amarte knew that its motions to amend were baseless and filed them anyway "in the hopes that Defendants would fold and pay Amarte multiples of Amarte's annual product revenue."  Mot. at 10.  Amarte counters that the mere fact that the Court ruled against it on these motions does not make its conduct "exceptional" for purposes of attorney fees under the Lanham Act.  Opp. at 9.  Of course, the mere fact that Amarte lost several key motions does not in itself warrant attorney fees.  See Blue Bottle Coffee, LLC v. Liao, No. 21-cv-6083-CRB, 2024 WL 2061259, at *4 (N.D. Cal. May 7, 2024).  Still, Amarte's conduct rises to the level of unreasonable in two ways.

First, Amarte's effort to add the parent companies comes on the heels of its failed effort to do so in another case, Amarte USA Holdings, Inc. v. G.L.E.D. Cosmetics, US Ltd., No. 20-cv-768-CAB.  In that case, the district court rejected Amarte's attempt to add parent companies to litigation on the grounds that its boilerplate allegations were conclusory (and therefore insufficient) as to both liability and personal jurisdiction.  2020 WL 10322586 (S.D. Cal. Dec. 15, 2020).  Amarte should therefore have been on notice of the consequences of trying to sue parent companies without sufficiently specific allegations.  Yet it made the same kind of flawed allegations in its proposed amended

complaint in this case. Amarte contends that the Court should ignore the other litigation because "a district court's consideration of a party's 'unreasonable' conduct is limited to the case at bar." Opp. at 12 (citing <u>Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.</u>, No. 17-cv-1118-BEN, 2021 WL 1265210, at *5 (S.D. Cal. Apr. 5, 2021)). That is only partially correct. Courts should not award attorney fees based on parties' conduct in other cases. <u>See</u> <u>id.</u> But there is no reason that a party's involvement in other litigation cannot be <u>relevant</u> for the purpose of assessing whether that party acted unreasonably in this litigation. <u>Cf.</u> <u>Gametek LLC v. Zynga</u>, No. 13-cv-2546-RS, 2014 WL 4351414, at *4 (N.D. Cal. Sept. 2, 2014) (concluding that the party seeking fees had failed to explain why its opponent's conduct in prior litigation "is relevant to the question of fees in this case"). Here, it is proper for the Court to consider Amarte's conduct in the <u>G.L.E.D.</u> litigation to the extent that it colors Amarte's actions in <u>this</u> litigation.

<u>Second</u>, Amarte received a clear ruling on its first failed attempt to amend its complaint to add more retailers as defendants. The Court expressly stated that Amarte "might be able to amend its complaint in the future to plead facts that support direct infringement or personal jurisdiction as to each of the proposed defendant." Order Denying First & Second Mots. to Amend at 6. But Amarte did not bother to address in its third attempted amended complaint the problems that the Court had identified; instead, it used "the same insufficient pleading" as before. Order Denying Third Mot. to Amend at 14. Amarte's belated assertion now that it sought leave to amend to add the retailers because "it believed those parties were liable," Opp. at 11, is belied by Amarte's failure twice over to allege facts consistent with that belief.

Amarte's repeated attempts to add nonviable parties to this litigation—especially in light of clear direction from multiple district courts—constitute unreasonable conduct. They also highlight some concerning aspects of Amarte's litigation strategy. Amarte showed clear disregard for adverse rulings (from this Court and from other courts) and took every chance at its disposal to expand the litigation as broadly as possible. It strains credibility that these motions, which Amarte never substantiated with factual allegations or

fact-based arguments, were made in good faith rather than for the impermissible purpose of pressuring Defendants to settle regardless of the suit's actual merits.[4]

### 2.    Factual misrepresentations

In its interrogatory responses and its submissions to the Court, Amarte made repeated factual misrepresentations that crossed the line into unreasonable territory.  Such conduct is grounds for the Court to find this case an "exceptional" one warranting attorney fees.  See Dropbox, Inc. v. Thru, Inc., No. 15-cv-1741-EMC, 2017 WL 914273, at *3 (N.D. Cal. 2017) (misleading and incomplete interrogatory responses, the problems with which were later revealed at deposition, justify award of attorney fees); Elem Indian Colony of Pomo Indians v. Ceiba Legal, LLP, 230 F. Supp. 3d 1146, 1150–51 (N.D. Cal. 2017) ("[P]laintiff's unreasonable conduct, including misrepresentations and misleading statements to the Court, makes this action exceptional.").

Regarding Amarte's interrogatory responses, Amarte misrepresented the scope of its products soled with the EYECONIC mark.  Defendants asked Amarte to "[i]dentify all goods offered by Amarte under the [EYECONIC] Mark from first use in commerce to present."  Pl.'s Resps. to First Set of Interrogs. (dkt. 98-4) at 3.  Amarte responded with a vague bullet-point list: "Cosmetics, skin care products, cosmetic creams, skin care creams, eye cosmetics, and eye creams."  Id. at 3–4.  But later, in Amarte's 30(b)(6) deposition, its corporate representative stated that it had only ever offered one product, Eyeconic Eye Cream, with the EYECONIC mark.  Kraffert Dep. Tr. (dkt. 98-3) at 28:14–23.  Amarte now argues that its Eyeconic eye cream could be characterized as an eye cream and an eye cosmetic, thus making its interrogatory response correct—from a certain point of view.

---

[4] Amarte contends that Defendants "never made any formal request to address any of these issues" and argues that they "should not be rewarded for 'simply hiding under a rock, quietly documenting all the ways they've been wronged, so that they can march out a "parade of horribles" after all is said and done.'"  Opp. at 10 (cleaned up) (quoting Stone Basket Innovations, LLC v. Cook Med. LLC, 892 F.3d 1175, 1181 (Fed. Cir. 2018)).  But as Defendants explain, they made clear at every step of the way that Amarte had no legitimate basis for its motions.  Id. at 11 (citing Defs.' Opp. to Pl.'s Second Mot. to Amend (dkt. 67) at 16–17, and Defs.' Opp. to Pl.'s Third Mot. to Amend (dkt. 74) at 15–16).  Amarte's attempt to shift the burden onto Defendants therefore fails.

United States District Court
Northern District of California

Opp. at 11–12.  Amarte's reasoning twists Defendants' interrogatory and its response beyond recognition.  Defendants asked Amarte to list "all goods" sold with the EYECONIC mark, not to list all potential marketing categories for Amarte's EYECONIC eye cream.  At best, Amarte's response was misleading.  And either way, it undermined the purpose of interrogatories, which is "to narrow the issues that will be addressed at trial."  Lexington Ins. Co. v. Commonwealth Ins. Co., No. C98-3477CRB (JCS), 1999 WL 33292943, at *7 (N.D. Cal. Sept. 17, 1999).

 As for Amarte's submissions to the Court, Amarte repeatedly misrepresented facts that were material to the likelihood-of-confusion analysis.  Two clear-cut examples illustrate this: Amarte (1) contended that its EYECONIC eye cream and Defendants' MJB EYE-CONIC eye shadow were sold "on the same displays in stores," Amarte MSJ (dkt. 181) at 6, and (2) that Defendants sold MJB EYE-CONIC eye shadow on Amazon, Amarte Opp. to Defs.' MSJ (dkt. 180) at 21–22.  Amarte now acknowledges that the first statement was false, see Opp. at 6, and the Court has already observed that Amarte "dropped" the second argument altogether, see MSJ Order at 18 n.10.  Instead of attempting to establish that these statements were factually sound, Amarte challenges Defendants' assertion that these misstatements were intentional, suggesting that they were "unfortunate typographical error[s]" that were "never repeated elsewhere."  Opp. at 6.  But as Defendants note, that statement itself is untrue: for instance, Amarte made the same argument about the EYECONIC and MJB EYE-CONIC products being sold on the same displays in multiple motions, even after Defendants demonstrated that there was no factual basis for the argument.  Compare Amarte Opp. to Defs.' MSJ at 16 (filed Dec. 1, 2023), and Amarte MSJ at 6 (filed Dec. 23, 2023), with Reply ISO Defs.' MSJ (dkt. 176) at 14 (filed Dec. 8, 2023).  Amarte's decision to double down on its misrepresentations is at odds with its current position that those misstatements were nothing more than stray typos.

 Amarte has repeatedly played fast and loose with facts—from its interrogatories to its summary judgment briefs and even in its arguments on this fees motion.  And while Amarte tries to characterize its conduct as "zealous advocacy," Opp. at 7, its statements

cross "the line between 'zealous advocacy' and misrepresentations to the court." Caputo v. Tungsten Heavy Powder, Inc., 96 F.4th 1111, 1163–64 (9th Cir. 2024) (recommending that attorneys face discipline for misconduct that included factual misrepresentations in motions). That amounts to unreasonable litigation conduct that warrants attorney fees under the Lanham Act.

### 3. Discovery stonewalling

Amarte also refused to engage in good-faith discovery, even beyond its deficient interrogatory responses discussed above. And while discovery disputes are unfortunately all too common in litigation, a party's consistent stonewalling can constitute unreasonable behavior that makes a case "exceptional" under the Lanham Act. See Digital Reg of Tex., LLC v. Adobe Sys., Inc., No. C 12-1971 CW, 2015 WL 1026226, at *4 (N.D. Cal. Mar. 9, 2015); Universal Elecs., Inc. v. Universal Remote Control, Inc., 2015 WL 12733442, at *5–6 (C.D. Cal. Mar. 10, 2015). Two instances in particular showcase Amarte's unreasonableness.

First, Amarte refused to produce its settlement agreements in similar trademark litigation, initially stating that they were "not relevant." Williams Decl. (dkt. 190-1) ¶ 42 & Ex. B. Yet in its summary judgment briefs, Amarte referenced its enforcement efforts— which would have included settlements. See Amarte's Opp. to Defs.' MSJ at 20; Amarte's MSJ at 11. Even still it resisted Defendants' renewed efforts, now obviously appropriate, to discover its settlement agreements with other parties before ultimately relenting and turning them over. Williams Decl. ¶ 42 & Ex. B. Amarte argues that its behavior was not unreasonable because it never cited the settlement agreements and because Defendants never moved to compel production. Opp. at 11. But the scope of discovery is not limited to cited material; rather, it encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And the fact that Amarte eventually disclosed the settlement agreements does not justify its misconduct leading up to the summary judgment motions.

Second, Amarte refused to identify a damages computation in its Rule 26(a) initial

United States District Court
Northern District of California

1    disclosures, and it never supplemented those disclosures as required by Rule 26(e).

2    Amarte tried to excuse its refusal using the Ninth Circuit's decision in <u>Skydive Arizona,</u>

3    <u>Inc. v. Quattrocchi</u>, 673 F.3d 1105 (9th Cir. 2012), but that opinion does not actually help

4    Amarte.  Rather than stating that a plaintiff need not disclose or supplement damages

5    calculations under Rule 26(a)(1)(A)(iii), <u>Skydive Arizona</u> holds only that a Lanham Act

6    plaintiff has various methods at its disposal to calculate damages.  <u>Id.</u> at 1113.  Amarte's

7    refusal to comply with the requirements of the Federal Rules of Civil Procedure is yet

8    another example of its uncooperative approach to discovery.

9        To be sure, given how common discovery disputes are, they rarely make a case

10   "extraordinary" on their own.  But Amarte's uncooperative behavior is unreasonable in

11   large part because it is consistent with its other misconduct, which across the board had the

12   effect of obfuscating issues, delaying proceedings, expanding the scope of the litigation,

13   and ultimately pressuring Defendants to settle regardless of the merits.  Indeed, given all of

14   Amarte's misconduct, it is very likely that the unnecessary bloating of this litigation was

15   Amarte's intent all along.

16                              *        *        *

17       These three categories of Amarte's litigation conduct—repeated meritless motions,

18   factual misrepresentations, and uncooperativeness in discovery—all factor together in the

19   Court's decision to award attorney fees to Defendants.  Defendants raise several other

20   points that they assert weigh in favor of attorney fees, including Amarte's alleged refusal

21   to recognize binding Ninth Circuit precedent and filing of at least one allegedly frivolous

22   <u>Daubert</u> motion.  Mot. at 13–14, 16.  While Amarte's actions in these areas do not rise to

23   the level of misconduct, they do expose another concerning trend: Amarte's apparent

24   disregard for factual, legal, and procedural limitations on its approach to litigation.  It is

25   proper for the Court to award attorney fees to deter of that kind of unreasonable conduct.

26   <u>See</u> <u>SunEarth</u>, 839 F.3d at 1181 (quoting <u>Octane Fitness</u>, 572 U.S. at 554 n.6).

27       **B.      Reasonableness of Fee Award**

28       To determine whether an award of attorney fees is reasonable, the Court calculates

the "lodestar," which entails "multiplying the hours reasonably worked by a reasonable hourly rate." Lanard Toys Ltd. v. Dimple Child LLC, 843 F. App'x 894, 897 (9th Cir. 2021). Fees so calculated are presumed reasonable. City of Burlington v. Dague, 505 U.S. 557, 562 (1992). Nevertheless, Amarte challenges Defendants' counsel's rates and hours.[5]

As to counsel's rates, the cases on which Amarte relies are either fairly similar to those rates, Morrow v. Travelade, Inc., No. 23-cv-4593-NC, 2024 WL 1511904, at *4 (N.D. Cal. Mar. 1, 2024) (approving $750 per hour for a partner, $500 per hour for an associate, and $125–$250 per hour for paralegals), or outdated, Cairns v. Franklin Mint, 292 F.3d 1139, 1157 (9th Cir. 2002); Dropbox, 2017 WL 914273, at *4. They therefore do not provide grounds for the Court to reject counsel's rates, which are in line with similarly situated counsel's current rates. Compare HP Inc. v. Wiseta, No. 23-cv-344-RFL (AGT), 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (approving $1,075 per hour for a partner and $625–$725 for associates).

As to the hours that counsel spent on this matter, Amarte cannot in good faith claim that the work Defendants' counsel performed in response to Amarte's repeated efforts to balloon the scope of this litigation are unreasonable.[6] See Thiebes v. Wal-Mart Stores, Inc., 220 F. App'x 750, 751 (9th Cir. 2007) ("When a defendant employs a scorched earth strategy, unreasonably increasing a plaintiff's litigation expenses, the defendant can expect to pay for the attorney fees it forces the plaintiff to incur."). Nor is the Court persuaded by Amarte's brief argument based on the ratio of partner hours to associate hours given the significant work performed on this case by paralegals and other legal professionals. Those timekeepers often do similar work as an associate but at a much lower billable rate, and the Court will not penalize such cost-saving measures.

---

[5] This District's Local Rules require parties to meet and confer regarding motions for fees. Local Civ. R. 54-5(a). But Amarte refused, Williams Decl. ¶ 9, lodging its objections to Defendants' fee calculations for the very first time in its opposition brief. Amarte's refusal to meet and confer is further evidence of Amarte's unreasonable behavior in this case.
[6] Amarte argues that the Court should require Defendants to submit billing records, but that is not required under this District's Local Rules. See Local Civ. R. 54-5(b)(2). Defendants properly substantiated their motion with declarations that describe the work performed and rates charged by their timekeepers. See Williams Decl. ¶¶ 38–72.

**III.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion and **AWARDS** attorney fees to Defendants in the amount of $1,383,663.50, plus an amount to be determined for the time that Defendants spent preparing and litigating this motion.  The parties are instructed to meet and confer and provide the Court with the updated amount of attorney fees.

**IT IS SO ORDERED.**

Dated: December 5, 2024



CHARLES R. BREYER
United States District Judge